UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRON DUMEL,

                    Plaintiff,

     v.

WESTCHESTER COUNTY, *et al.,*

                  Defendants.

No. 19-CV-2161 (KMK)

OPINION & ORDER

Appearances:

Tyron Dumel
Albion, New York
*Pro Se Plaintiff*

Paul A. Sanders, Esq.
Barclay Damon LLP
Rochester, New York
*Counsel for Defendants Westchester County, Correct Care Solutions, LLC, Dr. Raul Ulloa, Dr. Alexis Gendell, and Nurse Vladimir Asseauguste*

Jane H. Felix, Esq.
Westchester County Attorney's Office
White Plains, New York
*Counsel for Defendants Westchester County, Commissioner Joseph Spano, and Sergeant Matthew Kitt*

KENNETH M. KARAS, United States District Judge:

Pro se Plaintiff Tyron Dumel ("Plaintiff"), a pretrial detainee at Westchester County Jail at the time of the allegations, brings this Action under 42 U.S.C. § 1983 against Westchester County (the "County"), Correct Care Solutions, LLC ("Correct Care"), Medical Director Dr. Raul Ulloa ("Ulloa"), Commissioner Joseph Spano ("Spano"), Sergeant Matthew Kitt ("Kitt"),

Nurse Vladimir Asseauguste ("Asseauguste"), and Dr. Alexis Gendell ("Gendell").  (Am. Compl. 1, 3 (Dkt. No. 33).)[1]

Before the Court are two Motions To Dismiss Plaintiff's Amended Complaint, one on behalf of Municipal Defendants and Medical Defendants, (*see* Dkt. No. 42), and one on behalf of the County and Correctional Defendants, (*see* Dkt. No. 46).  For the following reasons, Municipal Defendants and Medical Defendants' Motion is granted in full, while the County and Correctional Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true for the purposes of resolving the instant Motions.[2]

Plaintiff arrived at the Westchester County Jail ("WCJ") for pretrial detention on September 25, 2015, whereupon he requested to be tested for sexually transmitted diseases ("STDs").  (Am. Compl. 2.)[3]  Plaintiff received an STD test from a Correct Care employee the

---

[1] This Opinion refers to the County and Correct Care as "Municipal Defendants"; Ulloa, Gendell, and Asseauguste as "Medical Defendants"; Spano and Kitt as "Correctional Defendants"; and all Defendants collectively as "Defendants."

[2] Where appropriate, the Court also considers factual allegations contained in Plaintiff's opposition papers to the extent those allegations are consistent with the Amended Complaint. *See Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) ("[W]here a pro se plaintiff is faced with a motion to dismiss, a court may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint." (citation, italics, and quotation marks omitted)); *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) ("[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as his opposition memorandum." (italics and citations omitted)).

[3] Unless otherwise noted, page references to Plaintiff's submissions refer to the ECF stamp at the top of the page.

following day.  (*Id.*)  Two days later, test results indicated that Plaintiff had Chlamydia, (*see id.*),

"a common [sexually transmitted disease]" that can cause considerable discomfort, *see* Ctrs. for

Disease Control & Prevention ("CDC"), *Chlamydia - CDC Fact Sheet* 1 (June 2017),

https://www.cdc.gov/std/chlamydia/Chlamydia-FS.pdf, and medication was ordered to treat the

infection, (*see* Letter from Tyron Dumel to Court (May 29, 2020) ("Pl.'s Opp'n") 1 (Dkt. No.

47)).[4],[5]  Plaintiff alleges that Defendants Ulloa and Gendell were responsible for reviewing

inmates' medical information and "were informed of [Plaintiff's] positive Chlamydia result."

(Am. Compl. 2.)  The Amended Complaint also suggests that a third individual Defendant—

Asseauguste—knew of Plaintiff's positive test result.  (*See id.*)

But despite the results of his STD test, Plaintiff received no treatment for his infection.

(*Id.*)  As Plaintiff "waited patiently for treatment for weeks," he continued to endure

"unbearable" pain when urinating.  (*Id.*)  Given the nature of his infection, however, Plaintiff

---

[4] For reasons discussed *infra* n.7, the Court will construe Plaintiff's May 29, 2020 letter as his Opposition to Defendants' Motions To Dismiss.

[5] A court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned . . . at any stage in the proceeding," including on a motion to dismiss. *Allianz Glob. Investors GmbH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401, 410 n.3 (S.D.N.Y. 2020) (alteration in original) (quoting Fed. R. Evid. 201).  Courts have taken judicial notice of facts from reputable medical sources such as the CDC in order to provide basic background information.  *See Basank v. Decker*, — F. Supp. 3d —, 2020 WL 1953847, at *7 (S.D.N.Y. Apr. 23, 2020) (taking judicial notice of COVID-19 complications based on CDC websites); *Lin v. Metro. Life Ins. Co.*, No. 07-CV-3218, 2009 WL 806572, at *1–2 & n.2 (S.D.N.Y. Mar. 30, 2009) (taking judicial notice of background information regarding Hepatitis B based in part on a CDC website), *reconsideration denied*, 2010 WL 668817 (S.D.N.Y. Feb. 25, 2010), *aff'd*, 410 F. App'x 413 (2d Cir. 2001).

The Court notes that symptoms of Chlamydia in men include, among others, "[a] burning sensation when urinating[,] [as well as] [p]ain and swelling in one or both testicles (although this is less common)."  *Chlamydia - CDC Fact Sheet* 2.  "Untreated chlamydia may also increase [an individual's] chances of getting or giving HIV – the virus that causes AIDS," and, in rare cases, may "prevent a man from being able to have children."  *Id.*

was "very embarrassed about [his] condition" and was ashamed "to speak to someone about [his] lack of treatment." (*Id.*)

Eventually—the Amended Complaint does not say when—Plaintiff notified a sergeant that he had tested positive for Chlamydia but had not received medical treatment. (*Id.* at 2–3.) This sergeant, identified as Defendant Kitt, allegedly exclaimed, "Wow!  You're burning dude[,]" and told Plaintiff that he would "go speak to [the] medical [team] about [Plaintiff's condition] and [would] be right back." (*Id.* at 3.)  But Kitt did not return. (*Id.*)  To the contrary, Plaintiff alleges that he overheard Kitt and another sergeant "laughing" about his condition "several days later." (*Id.*)

Finally, on January 1, 2019—three months after Plaintiff tested positive for Chlamydia— Plaintiff filed a grievance regarding his lack of medical treatment. (*Id.*)  Plaintiff received treatment the following day. (*Id.*)  Plaintiff alleges that in response to his filed grievance, Defendant Asseauguste claimed that Plaintiff had refused medical treatment on September 28, 2018. (*Id.*)  Plaintiff disputes this assertion, noting that his "file" does not contain a "refusal of treatment" form as required when an inmate declines treatment. (*Id.*)  Plaintiff avers that he neither refused nor was offered treatment. (*Id.*)

Plaintiff alleges that he suffered from Defendants' "cruel and unusual punishment" in violation of the Eighth Amendment and their deliberate indifference to his serious medical condition in violation of the Fourteenth Amendment. (*See id.*)  His alleged injuries include "[u]nnecessary pain and suffering[,] mental disturbance[,] embarrassment and humiliation[,] severe pain when urinating[,] fertility damage[,] psychological pain and suffering[,] emotional trauma and distress[,] debilitating headaches[,] [and] nausea," among other injuries. (*Id.* at 3–4.)

Plaintiff seeks compensatory damages in the amount of $750,000 and punitive damages in the amount of $1,000,000.  (*Id.* at 4.)

In addition to these allegations, Plaintiff also claims that Defendants "continue to engage in a pattern of providing inadequate medical care" at WCJ, as evidenced by "the many federal lawsuits, grievances[,] and complaints filed against" Defendants.  (*Id.* at 3.)  Specifically, Plaintiff alleges that the County and Spano "fail to properly train and supervise correctional staff," including Kitt, and fail to exercise appropriate oversight of the County's medical contractor, Correct Care, and its employees, including Ulloa, Gendell, and Asseauguste.  (*Id.*)

B.  Procedural History

Plaintiff filed his initial Complaint on March 8, 2019, naming the County, Correct Care, Ulloa, Spano, Kitt, Gendell, and "Nurse Jane Doe" as Defendants.  (Compl. 1 (Dkt. No. 2).)  The Court granted Plaintiff's request to proceed in forma pauperis on May 21, 2019, (*see* Dkt. No. 5), and, on June 24, 2019, issued an Order of Service directing Correct Care to aid Plaintiff in ascertaining the identity of Nurse Jane Doe and to inform Plaintiff of this person's identity, (*see* Dkt. No. 9).  The Order of Service also directed Plaintiff to file an amended complaint within 30 days of learning the nurse's identity.  (*Id.*)  On August 7, 2019, counsel for Defendants identified the nurse as Vladimir Asseauguste.  (Letter from Paul A. Sanders, Esq., to Court (Aug. 7, 2019) 1 (Dkt. No. 18).)  The following day, the Court again directed Plaintiff to file an amended complaint naming Asseauguste as a Defendant.  (*See* Dkt. No. 19.)

After Plaintiff failed to file an amended complaint, the Court issued an Order on November 8, 2019 directing Plaintiff to show cause why the claims against "Nurse Jane Doe" should not be dismissed.  (*See* Order To Show Cause 2 (Dkt. No. 24).)  Plaintiff responded on December 4, 2019, (*see* Dkt. No. 28), and, after receiving several extensions from the Court, (*see*

Dkt. Nos. 29, 32), Plaintiff filed his Amended Complaint on March 4, 2020, (*see* Dkt. No. 33).

Pursuant to a briefing schedule set by the Court, (*see* Dkt. No. 40), Municipal Defendants and

Medical Defendants filed a Motion To Dismiss on May 26, 2020, (*see* Not. of Mot. (Dkt. No.

42)), and the County and Correctional Defendants filed a separate Motion To Dismiss on June 2,

2020, (*see* Not. of Mot. (Dkt. No. 46)).  Meanwhile, on May 29, 2020, Plaintiff filed a letter in

response to arguments outlined by counsel for Defendants in their respective pre-motion letters.

(*See* Pl.'s Opp'n.)[6]  Municipal and Medical Defendants filed their Reply on July 8, 2020.  (*See*

Reply Mem. of Law in Further Supp. of Defs.' Mot. To Dismiss ("Mun. & Med. Defs.' Reply")

(Dkt. No. 48).)  On July 13, 2020, Plaintiff filed a short document styled as an "Affidavit in

Response to [Defendants'] Motion[s] To Dismiss" (the "Dumel Affidavit"), in which Plaintiff

requested "time for discovery," averring that Defendants are in possession of "crucial

documents" needed to oppose the Motions To Dismiss.  (*See* Aff. in Resp. to Mot. To Dismiss

¶¶ 5–6 (Dkt. No. 51).)  The Court denied the request on July 16, 2020, explaining that

"[d]iscovery at this point in the proceedings would be premature," (*see* Dkt. No. 54), and County

and Correctional Defendants filed their Reply on July 21, 2020, (*see* Reply Mem. of Law in

Further Supp. of Mot. To Dismiss ("County & Corr. Defs.' Reply") (Dkt. No. 55)).  On August

24, 2020, Plaintiff filed a letter with the Court requesting additional time to file an Opposition to

Defendants' Motions.  (*See* Letter from Tyron Dumel to Court (Aug. 18, 2020) (Dkt. No. 56).)

---

[6] Although Plaintiff's letter was not received and docketed until May 29, 2020, it is dated
May 14, 2020—that is, 12 days before Municipal and Medical Defendants filed their Motion To
Dismiss, and 19 days before County and Correctional Defendants filed their Motion To Dismiss,
(*see* Dkt. Nos. 42, 46).  Thus, insofar as Plaintiff's letter "endeavor[s] to address the[] allegations
forwarded from [Defendants'] counsel," (Pl.'s Opp'n 1), Plaintiff only could have responded to
the summary of arguments outlined in Defendants' respective pre-motion letters, (*see* Letter
from Paul A. Sanders, Esq., to Court (Apr. 14, 2020) (Dkt. No. 37); Letter from Jane Hogan
Felix, Esq., to Court (Apr. 15, 2020) (Dkt. No. 39)).

On August 27, 2020, the Court gave Plaintiff until September 30, 2020 to file any additional

Opposition papers, (*see* Dkt. No. 57), but Plaintiff failed to do so.[7]

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of

his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of

Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed me

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation

marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to

relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the

line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

---

[7] Although Plaintiff's May 29, 2020 letter to the Court was written before Plaintiff could have reviewed either Motion To Dismiss, Municipal and Medical Defendants and County and Correctional Defendants filed their Reply Memoranda on July 8, 2020 and July 21, 2020, respectively, apparently treating Plaintiff's May 29 letter as his Opposition filing.  Because the subsequently-filed Dumel Affidavit simply requested discovery without responding substantively to either Motion, and because Plaintiff subsequently failed to file a more traditional Opposition brief when given the opportunity, the Court will also construe Plaintiff's May 29 letter as his Opposition.

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggests[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also*

*Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).  Moreover, the "failure to oppose [Defendants'] [M]otion [T]o [D]ismiss does not, by itself, require the dismissal of [Plaintiff's] claims."  *Leach v. City of New York*, No. 12-CV-2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013).  Rather, even though "a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law."  *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

B.  Analysis

Liberally construed, the Amended Complaint alleges violations under the Fourteenth Amendment against all Defendants: against Municipal Defendants and individual Defendants in their official capacities, Plaintiff alleges a municipal liability claim pursuant to *Monell*; against Spano individually, Plaintiff appears to allege a claim based on supervisory liability; against Municipal and Medical Defendants, Plaintiff alleges a claim for deliberate indifference to a serious medical need; and against Kitt individually, Plaintiff also alleges a claim for deliberate indifference to a serious medical need.

1.  Municipal Liability

Plaintiff has sued all Defendants in both their individual and official capacities.  (*See* Am. Compl. 1.)  "A claim asserted against a [defendant] in his official capacity . . . is in effect a claim against the governmental entity itself . . . for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 690 n.55 (1978)).  Defendants argue that the Amended Complaint fails plausibly to allege claims for municipal liability under *Monell* against the County and Correct Care.  (*See* Mem. of Law in Supp. of [Municipal & Medical] Defs.' Mot. To Dismiss ("Mun. & Med. Defs.' Mem.") 3–6 (Dkt. No. 44); Mem. of Law in Supp. of [County & Correctional] Defs.' Mot. To Dismiss ("County & Corr. Defs.' Mem.") 4–6 (Dkt. No. 46-4).)[8]

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691.  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91).  The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citation and italics omitted).  Rather, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."  *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008).  A plaintiff may satisfy the fifth element by alleging

---

[8] Section 1983 claims against Correct Care have previously been evaluated as *Monell* claims.  *See Villa v. Westchester County*, No. 19-CV-428, 2020 WL 4505968, at *3–4 (S.D.N.Y. Aug. 5, 2020) (considering and dismissing a *Monell* claim against Correct Care); *Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *5 (S.D.N.Y. Mar. 29, 2019) (same); *Tutora v. Correct Care Sols., LLC*, No. 17-CV-9169, 2019 WL 1383646, at *4 (S.D.N.Y. Mar. 27, 2019) (same).

one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Moreover, a plaintiff also must establish an "affirmative" causal link between the municipality's

policy, custom, or practice and the alleged constitutional injury.  *City of Okla. City v. Tuttle*, 471

U.S. 808, 824 n.8 (1985).

Here, Plaintiff claims that "it was the [customary practice] of [the Westchester County

Department of Corrections] to offer and provide inmates with unconstitutional medical treatment

due to inadequate training and supervision."  (Am. Compl. 3.)[9]  Relatedly, he alleges that the

County and Spano "fail to properly train and supervise correctional staff" and "further fail to

enforce oversight over their contractor Correct Care" and its employees.  (*Id.*)  Neither assertion,

without more, is sufficient to establish the fifth element of a *Monell* claim.

As stated, a plaintiff may establish the fifth element of a *Monell* claim by alleging a

"consistent and widespread" practice.  *See Brandon*, 705 F. Supp. 2d at 276.  But here, although

Plaintiff conclusorily claims that the County has a customary practice of "provid[ing] inmates

with unconstitutional medical treatment," (Am. Compl. 3), he fails to allege the existence of any

other similar incidents or complaints, apart from a vague allusion to "the many federal lawsuits,

---

[9] The Westchester County Department of Correction ("WCDOC") is not a party to this Action.  (*See* Am. Compl. 1.)

grievances[,] and complaints filed against these individuals." (*Id.*)[10]  This failure "dooms Plaintiff's claim because a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Ruiz v. Westchester County*, No. 18-CV-7007, 2020 WL 4340788, at *7 (S.D.N.Y. July 28, 2020) (citation and quotation marks omitted); *see also Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (affirming dismissal of *Monell* claim where "the amended complaint provide[d] only one additional example of a similar incident"); *Villa*, 2020 WL 4505968, at *4 ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (quoting *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012))); *Cox v. City of New Rochelle*, No. 17-CV-8193, 2019 WL 3778735, at *8 (S.D.N.Y. Aug. 12, 2019) (dismissing *Monell* claim where, "apart from the incident giving rise to this case . . . [the] [p]laintiff fail[ed] to allege facts plausibly suggesting any other similar example of [the municipality's] failure to supervise or train officers"); *Johnson v. Paul*, No. 17-CV-3654, 2018 WL 2305657, at *3 (S.D.N.Y. May 21, 2018) (finding that no *Monell* claim had been made out because "a single incident . . . especially if it involved only actors below the policy making level, does not suffice to show a municipal policy" (omission in original) (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998))).  Moreover, "mere citations to lawsuits, even if they did involve comparable conduct, do not alone establish a custom or practice that is widespread and persistent, particularly if the lawsuits did not result in adjudication of liability." *Bethune v. Westchester County*, No. 18-CV-3500, 2020 WL 1032508, at *5 (S.D.N.Y. Mar. 2, 2020).  Plaintiff does not cite any particular civil actions, does not plead factual matter suggesting that those civil actions involved similar conduct or were filed against the same actors,

---

[10] Plaintiff does not provide any specific examples of other similar lawsuits.

and does not allege that the actions reached conclusions consistent with his allegations.

Accordingly, a "consistent and widespread" custom or practice has not been pled.  *Brandon*, 705

F. Supp. 2d at 276.

Plaintiff also fails plausibly to allege a failure-to-train claim.  To state a claim for

municipal liability based on failure to train, Plaintiff must allege facts which support an inference

that the County failed to train its employees, that it did so with deliberate indifference, and that

the failure to train caused his constitutional injuries.  *See Treadwell v. County of Putnam*, No. 14-

CV-10137, 2016 WL 1268279, at \*4 (S.D.N.Y. Mar. 30, 2016) ("To establish *Monell* liability

premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of

allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2)

the municipality consistently failed to investigate those allegations.").  Further, "a plaintiff must

plausibly allege a specific deficiency in the municipality's training."  *Tieman v. City of*

*Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at \*22 (S.D.N.Y. Mar. 26, 2015).  In particular,

a failure to train constitutes a policy or custom that is actionable under § 1983 only where,

> in light of the duties assigned to specific officers or employees the need for more
> or different training is so obvious, and the inadequacy so likely to result in the
> violation of constitutional rights, that the policymakers . . . can reasonably be said
> to have been deliberately indifferent to the need.

*City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (footnote omitted).

Plaintiff's general claim that the County failed to train and supervise its staff is a

"boilerplate assertion[]" that is insufficient, without more, to state a *Monell* claim.  *Araujo v. City*

*of New York*, No. 08-CV-3715, 2010 WL 1049583, at \*9 (E.D.N.Y. Mar. 19, 2010) (citation and

quotation marks omitted) (dismissing failure-to-train claim where a plaintiff alleged "no facts to

indicate any deliberate choice by municipal policymakers to engage in unconstitutional

conduct").  Therefore, this claim is dismissed.  *See Acosta v. City of New York*, No. 11-CV-856,

13

2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim where the plaintiff merely alleged that the city "failed to train its police officers," because the plaintiff "failed to set forth factual allegations that would support a plausible inference that the [c]ity's 'policies' or 'customs' caused . . . [the] alleged violations of [the] plaintiff's rights"); *see also Rivera v. Westchester County*, No. 18-CV-8354, 2019 WL 3958425, at *5 (S.D.N.Y. Aug. 22, 2019) (dismissing *Monell* claim where the "[p]laintiff . . . cited no specific deficiency in [the defendant's] training or supervision protocols"); *Dawson v. Westchester County*, No. 18-CV-7790, 2019 WL 3408899, at *4 (S.D.N.Y. July 29, 2019) (same); *Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (dismissing *Monell* claim where the plaintiff alleged failure to supervise kitchen workers because the complaint was "devoid of any detailed factual allegations" that the defendant lacked "a relevant training or supervisory program" or that the defendant "was otherwise deliberately indifferent to food preparation problems"); *Triano*, 895 F. Supp. 2d at 539 (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program").

It is true that a plaintiff may establish deliberate indifference for a failure-to-supervise claim by showing "that the need for more or better supervision to protect against constitutional violations was obvious," from the fact that there "were repeated complaints of civil rights violations," and that "the complaints [were] followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (citation and quotation marks omitted); *see also Lawrence v. City of Rochester*, No. 09-CV-6078, 2015 WL 510048, at *7 (W.D.N.Y. Feb. 6, 2015) ("Deliberate indifference may be inferred from the failure to train or

supervise based on proof of repeated complaints of civil rights violations that are followed by no meaningful attempt on the part of the municipality to investigate or to forestall." (citation and quotation marks omitted)); *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at \*29 (N.D.N.Y. Feb. 3, 2009) (same).  However, even in those cases, the plaintiffs were able to detail the allegations in other lawsuits and grievances.  *See, e.g.*, *Tieman*, 2015 WL 1379652, at \*20 (holding that the plaintiff sufficiently alleged the need for better training or supervision where the plaintiff listed and detailed nine other complaints raising similar allegations against the same defendants); *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987, at \*4–5 (S.D.N.Y. Nov. 21, 2014) (holding that the plaintiff sufficiently alleged a need for better training or supervision where the plaintiff listed and detailed seventeen other complaints over a seven-year period raising similar allegations against the same defendants); *Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 WL 1311903, at \*8 n.7 (N.D.N.Y. Mar. 31, 2014) (stating that the fact that "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years" would be sufficient to surpass the motion-to-dismiss stage).  Because, as the Court has stated, Plaintiff provides no details of "the many federal lawsuits, grievances[,] and complaints" supposedly filed against Defendants, (*see* Am. Compl. 3), Plaintiff's *Monell* claim cannot survive the instant Motions on this ground, *see Rivera*, 2019 WL 3958425, at \*5 (dismissing *Monell* claim where the plaintiff alleged that "numerous similar lawsuits, grievances, and complaints" were filed against the defendant but "fail[ed] to provide any factual details regarding these other lawsuits and grievances"); *Dawson*, 2019 WL 3408899, at \*5 (dismissing as conclusory a *Monell* claim based on a threadbare allegation that "[d]efendants knew about . . . poor food conditions because of other complaints, grievances, and lawsuits").

15

Accordingly, Plaintiff's municipal liability claims are dismissed.  *See Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *4 (S.D.N.Y. July 25, 2019) (dismissing *Monell* claim where the plaintiff failed to "allege the existence of any policy, any actions taken or decisions made by any . . . policymaking officials, any systemic failures to train or supervise, or any practices so widespread that they practically have the force of law" and failed to "provide any factual details regarding . . . other [purported] lawsuits and grievances" on similar issues (collecting cases)); *see also McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [municipal] policy—unspoken or otherwise—that violates the Federal Constitution").

### 2.  Personal Involvement of Spano

Defendants also argue that any claim against Spano fails because the Amended Complaint does not allege that Spano had any personal involvement in any purported constitutional violation.  (*See* County & Corr. Defs.' Mem. 6–7.)  The Court agrees.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  In other words, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official."  *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).  Prior to *Tangreti*, the Second Circuit held that the following could establish a defendant's personal involvement:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed

16

> to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (italics omitted).  But in

*Tangreti*, the Second Circuit rejected "a special test for supervisory liability."  983 F.3d at 620.

Now, whatever the alleged constitutional violation may be, "[t]he violation must be established

against the supervisory official directly."  *Id.* at 618.  Here, however, the Court need not address

the significance of *Tangreti*, because Plaintiff fails to meet even the special supervisory

standards for personal involvement described in *Grullon*.

Here, Plaintiff fails plausibly to allege the personal involvement of Defendant Spano.

Plaintiff makes no mention of what role, if any, Spano played in training correctional staff or

supervising the County's contractor, Correct Care.  Indeed, apart from appearing in the caption,

Spano's name appears only once in the Amended Complaint, as part of a conclusory allegation

that he failed to train and supervise correctional staff and failed to exercise appropriate oversight

of Correct Care.  (*See* Am. Compl. 3.)  This alone is grounds for dismissal.  *See Ortiz v.*

*Bloomberg*, No. 10-CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (dismissing

claims where "the only named reference to [certain correctional officers] [was] in the caption of

the [c]omplaint, and the only additional references to these defendants [were] merely conclusory

statements about their personal involvement and liability").  Accordingly, any claims against

Spano are dismissed.

### 3.  Deliberate-Indifference Claim Against Medical Defendants

Plaintiff alleges that Medical Defendants were deliberately indifferent to his serious medical needs while detained at WCJ.  (*See* Am. Compl. 2–3.)  Medical Defendants argue that the alleged facts fail to state a deliberate-indifference claim.  (Mun. & Med. Defs.' Mem. 6–11.)

Because Plaintiff was a pretrial detainee at the time he was allegedly denied medical care, Plaintiff's claim falls under "the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  A pretrial detainee's rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner."  *Id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

"[W]hile in custody, a pretrial detainee has a Fourteenth Amendment substantive due process right to care and protection . . . ."  *Case v. Anderson*, No. 16-CV-983, 2017 WL 3701863, at *8 (S.D.N.Y. Aug. 25, 2017) (quoting *Kelsey v. City of New York*, 306 F. App'x 700, 702 (2d Cir. 2009)).  To establish a claim for deliberate indifference to medical needs under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee must establish two elements: first, that the "deprivation of medical care . . . [was] 'sufficiently serious,'" and second, that the defendant "acted or failed to act with 'a sufficiently culpable state of mind.'"  *Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The first element "is evaluated the same way under both the Eighth Amendment and Fourteenth Amendment."  *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *19 n.19 (S.D.N.Y. Mar. 30, 2018) (citing *Darnell*, 849 F.3d at 30).  This

requirement is "objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone v. N. Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted). "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30 (citation and quotation marks omitted). Analyzing this objective requirement involves two inquiries: "[t]he first inquiry is whether the [detainee] was actually deprived of adequate medical care," *Salahuddin*, 467 F.3d at 279, and the second "asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the [detainee]," *id.* at 280. To meet the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a [detainee's] medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented the following non-exhaustive list of factors to consider when evaluating a detainee's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (quotation marks omitted) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Morales v. Fischer*, 46 F. Supp. 3d 239, 247 (W.D.N.Y. 2014) (same), *appeal dismissed*, No. 14-3881 (2d Cir. June 18, 2015). Generally, the condition must be "'a condition of urgency' that may result in

'degeneration' or 'extreme pain.'" *Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351,

2017 WL 2274485, at *3 (S.D.N.Y. May 24, 2017) (quoting *Chance*, 143 F.3d at 702)).

  The second element "applies differently to claims under the Eighth Amendment and the

Fourteenth Amendment." *Howard v. Brown*, No. 15-CV-9930, 2018 WL 3611986, at *4

(S.D.N.Y. July 26, 2018) (citing *Darnell*, 849 F.3d at 34–35). "Prior to the Second Circuit's

decision in [*Darnell*, 849 F.3d 17,] the second element—whether the defendant acted with a

sufficiently culpable state of mind—was evaluated subjectively," regardless of whether the

plaintiff's claim arose under the Eighth Amendment (in the case of a convicted prisoner) or the

Fourteenth Amendment (in the case of pretrial detainees). *See Ryan v. County of Nassau*, No.

12-CV-5343, 2018 WL 354684, at *3 (E.D.N.Y. Jan. 10, 2018). However, in *Darnell*, in light of

the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Second

Circuit held that when a claim arises under the Fourteenth Amendment, "the pretrial detainee

must prove that the defendant-official acted intentionally" in denying adequate medical care, "or

recklessly failed to act with reasonable care . . . even though the defendant-official knew, or

should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849

F.3d at 35; *see also Ryan*, 2018 WL 354684, at *3 (same). "In other words, the second element

of a deliberate indifference claim under the Fourteenth Amendment"—the so-called "mens rea

prong"— is now "'defined objectively,' and a plaintiff is not required to show subjective

awareness by the defendant that '[his] acts (or omissions) have subjected the pre-trial detainee to

a substantial risk of harm.'" *Ryan*, 2018 WL 354684, at *3 (alteration in original) (quoting

*Darnell*, 849 F.3d at 35).[11,12]  Despite the slightly lower standard articulated in *Darnell*, which is

akin to objective recklessness, "any § 1983 claim for a violation of due process requires proof of

a mens rea greater than mere negligence."  *Smith*, 2017 WL 4417699, at *3 (italics omitted)

(quoting *Darnell*, 849 F.3d at 36); *see also Ryan*, 2018 WL 354684, at *3 (same); *Grimmett*,

2017 WL 2274485, at *4 (same).  "A detainee must prove that an official acted intentionally or

recklessly, and not merely negligently." *Darnell*, 849 F.3d at 36.

Here, even if Medical Defendants' delay in providing medication was deemed to satisfy

the objective prong, Plaintiff fails to allege facts plausibly suggesting that these Defendants

either intentionally deprived him of the prescribed medication or "recklessly failed to act with

reasonable care." *Darnell*, 849 F.3d at 35.  Even when construed liberally, the Amended

Complaint suggests, at most, that Medical Defendants were "merely negligent[]" in failing to

ensure that Plaintiff received his medication. *See id* at 36.  This does not appear to be a case

where, for example, a defendant intentionally deprives a plaintiff of medication. *Compare White*

*v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *13 (S.D.N.Y. Dec. 21, 2018)

(dismissing complaint against Ulloa and Gendell because the complaint did "not allege that Dr.

Ulloa and Dr. Gendell themselves delayed the administration of [the] [p]laintiff's medications"),

*with Thomas v. Tisch*, No. 08-CV-400, 2009 WL 701009, at *9 (E.D.N.Y. Mar. 11, 2009)

(finding that a complaint satisfied the more stringent, subjective prong of an Eighth Amendment

---

[11] The Second Circuit indicated in *Darnell* that, to prevent confusion, the second prong
under the Fourteenth Amendment analysis should now be referred to as the "mens rea prong,"
while the second prong under the Eighth Amendment analysis might still appropriately be
referred to as the "subjective prong." *See Darnell*, 849 F.3d at 29 (italics omitted).

[12] The Second Circuit has since confirmed that "[a]lthough *Darnell* did not specifically
address medical treatment, the same principle applies" to such claims. *Charles v. Orange
County*, 925 F.3d 73, 87 (2d Cir. 2019) (citation omitted).

deliberate-indifference claim where the plaintiff alleged that the defendants deliberately withheld medication). Nor is this a case where the defendants refused to administer a plaintiff's medications despite persistent requests from the plaintiff. *Cf. Milner v. Laplante*, No. 18-CV-903, 2019 WL 79428, at *3 (D. Conn. Jan. 2, 2019) (allowing deliberate-indifference claim under the Fourteenth Amendment to proceed where, although the plaintiff had repeatedly notified medical staff that he was out of medication, defendants "[took] [no] action to ensure that [the plaintiff] received proper treatment"); *Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, at *22 (E.D.N.Y. Aug. 22, 2017) (finding that plaintiff had sufficiently pled the mens rea prong of his deliberate-indifference claim where he had "repeatedly complained of pain but [where the] defendants refused to provide him with the prescribed pain medication"), *adopted by* 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017). Indeed, Plaintiff notes that, due to his embarrassment, he did not file his grievance until January 1, 2019, whereupon he received his medication the following day. (Am. Compl. 2, 3.)

Thus, in the end, this case is similar to other cases where plaintiffs merely allege a delay in the provision of medication or treatment, but fail to allege that the delay was either intentional or objectively reckless. *See Amberslie v. Prisoner Transp. Serv. of Am., LLC*, No. 17-CV-564, 2019 WL 1024183, at *13 (N.D.N.Y. Mar. 4, 2019) (dismissing deliberate-indifference claim based on the mens rea prong where the "plaintiff's allegations tend[ed] to show little more than an inadvertent failure to provide him with [his medication]"); *see also Bell*, 980 F. Supp. 2d at 561 (dismissing the plaintiff's deliberate-indifference claim where the defendant's "alleged carelessness caused the prescription-refill delay," and thus, the defendant's "behavior [did not] rise[] above the level of 'mere negligence'"); *Santos v. Nicholls*, No. 10-CV-3159, 2013 WL 3305336, at *5 (S.D.N.Y. July 1, 2013) (dismissing claim after finding that prison officials'

"failure to provide Motrin" while plaintiff experienced pain "[a]t most . . . reflected negligence"); *Vining v. Dep't of Corr.*, No. 12-CV-3267, 2013 WL 2036325, at *6 (S.D.N.Y. Apr. 5, 2013) (dismissing claim based on a delay in treatment where plaintiff did not allege that prison officials "intended or engineered" the delay, finding instead that "[p]laintiff's claim flow[ed] from scheduling errors" and "the impersonal dynamic of prison medical logistics," all of which amounted, "[a]t most," to negligence); *cf. Vail v. City of New York*, 68 F. Supp. 3d 412, 425 (S.D.N.Y. 2014) (dismissing deliberate-indifference claim where the defendants, accused of administering the wrong medication, had "[a]t most . . . acted negligently").[13]

Because the allegations in the Amended Complaint do not plausibly suggest that Medical Defendants intentionally deprived Plaintiff of medication or recklessly failed to act with reasonable care, Plaintiff's deliberate-indifference claim against these Defendants must be dismissed.

### 4.  Deliberate-Indifference Claim Against Kitt

As noted, Plaintiff alleges that after enduring "weeks" of "unbearable" pain, he eventually notified Defendant Kitt that he had been diagnosed with Chlamydia but had yet to receive any treatment or medication.  (Am. Compl. 2–3.)  Kitt allegedly responded: "Wow! You're burning dude; I'm going to go speak to medical about this and I'll be right back."  (*Id.* at 3.)  But according to Plaintiff, Kitt did not return, and no medical assistance was forthcoming. (*Id.*)  Instead, after "several days" passed, Plaintiff "overheard Kitt laughing with [another

---

[13] Although the deliberate-indifference claims in *Bell*, *Santos*, *Vining*, and *Vail* were all analyzed under the subjective prong, because the court concluded in each case that the challenged conduct amounted, at most, to negligence, the conduct would still be insufficient to state a claim under the post-*Darnell*, objective mens rea prong.  *See, e.g.*, *Charles*, 925 F.3d at 87 (observing that, after *Darnell*, "[a] plaintiff must show something more than mere negligence to establish deliberate indifference in the Fourteenth Amendment context" (citation and internal quotation marks omitted)).

correctional officer] about [Plaintiff's] Chlamydia condition." (*Id.*) Plaintiff did not receive medication to treat his infection until he eventually filed a grievance with the prison on January 1, 2019. (*Id.*)

According to Kitt, the gravamen of Plaintiff's claim against him is as an "allegation[] of verbal harassment or threats." (County & Corr. Defs.' Mem. 3.) Having framed the claim in this fashion, Kitt argues that such allegations "are generally an insufficient basis for an inmates [sic] section 1983 claim." (*Id.*) This may be so, but Kitt's framing fundamentally misconstrues the nature of Plaintiff's claim. The core of the claim is not that Kitt mocked or made light of Plaintiff's condition, but that he failed to secure medical attention as he promised he would. Liberally construed, the Amended Complaint asserts a deliberate-indifference claim against Kitt, rather than a mere allegation of verbal harassment.

"Although deliberate indifference claims are most often asserted against medical personnel," *Bookman v. Lindstrand*, No. 15-CV-1542, 2018 WL 3121688, at *12 (N.D.N.Y. Feb. 14, 2018), *report and recommendation adopted*, 2018 WL 1470585 (N.D.N.Y. Mar. 26, 2018), "non-medical personnel may [also] be found to have engaged in deliberate indifference," *Haynes v. City of New York*, No. 19-CV-1925, 2020 WL 4926178, at *14 n.28 (S.D.N.Y. Aug. 20, 2020) (citing *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018)). That Plaintiff has accused a correctional officer of deliberate indifference does not, however, alter the relevant analysis: "The same standards apply to a claim of deliberate indifference to serious medical needs on the part of nonmedical prison personnel." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017) (quoting *Hodge v. Coughlin*, No. 92-CV-622, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995)); *see also Shepherd v. Fisher*, No. 08-CV-9297, 2017 WL 666213, at

*11 (S.D.N.Y. Feb. 16, 2017) (observing that although certain defendants were "not medical personnel," an incarcerated plaintiff's deliberate-indifference claims against them were "nonetheless evaluated under the 'deliberate indifference' framework of the Eighth Amendment").  Courts in this Circuit have frequently observed that to establish a deliberate-indifference claim against nonmedical personnel, "a plaintiff must prove that [the] nonmedical prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment."  *Haynes*, 2020 WL 4926178, at *14 n.28 (quotation marks and alteration omitted) (quoting *Roundtree*, 2018 WL 1586473, at *6); *Crandell v. Ross*, No. 19-CV-6552, 2020 WL 134576, at *4 (W.D.N.Y. Jan. 13, 2020) (reciting the same standard); *Young v. Choinski*, 15 F. Supp. 3d 194, 200 (D. Conn. 2014) (same).  "At a minimum, there must be at least some allegations of a conscious or callous indifference to a prisoner's rights."  *Hodge*, 1994 WL 519902, at *11 (citation omitted).

### a.  Objective Prong

As discussed *supra*, Plaintiff must allege a deprivation of medical care that is "sufficiently serious" in order to establish the first, objective prong of his deliberate-indifference claim.  *Spavone*, 719 F.3d at 138.  Here, there is no question—and Defendants do not appear to contest—that Plaintiff "was actually deprived of adequate medical care," *Salahuddin*, 467 F.3d at 279, until he filed his grievance in January 2019.  The more difficult question, rather, is "whether the inadequacy in medical care [was] sufficiently serious."  *Id.* at 280.

In the Second Circuit, it is well established that certain sexually transmitted infections—such as HIV and Hepatitis C—constitute sufficiently serious conditions that satisfy the objective prong of a deliberate-indifference claim.  *See Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir.

2003) (acknowledging that, for purposes of a deliberate-indifference claim, "HIV is a serious medical condition"); *Taylor v. Naqvi*, No. 17-CV-920, 2017 WL 2662192, at *2 (D. Conn. June 20, 2017) (same); *Pabon v. Wright*, No. 99-CV-2196, 2004 WL 628784, at *5 (S.D.N.Y. Mar. 29, 2004) (gathering cases for the proposition "that Hepatitis C qualifies as a serious condition for purposes of [the objective prong] of an Eighth Amendment [deliberate-indifference] analysis"); *cf. Samuels v. Jackson*, No. 97-CV-2420, 1999 WL 92617, at *3 (S.D.N.Y. Feb. 22, 1999) (finding that scabies did "not qualify as a serious medical need" because, although the plaintiff had allegedly suffered from scratching, sores, and abrasions, he had not alleged that the condition affected his daily activities or caused "chronic and substantial pain" (citation omitted)).[14]  By contrast, the Court has not located any authority within this Circuit evaluating whether Chlamydia itself constitutes a "sufficiently serious" condition for purposes of such claims.  Turning to the relevant factors identified by the Second Circuit, however, it is clear, first, that "a reasonable doctor or patient would perceive [Plaintiff's] medical need . . . as important and worthy of comment or treatment," *Brock*, 315 F.3d at 162 (quotation marks omitted).  Indeed, the medical personnel who examined Plaintiff in September 2018 evidently *did* find Plaintiff's condition worthy of treatment, hence their decision to order medication that would treat the infection.  (*See* Pl.'s Opp'n 1.)  Second, Plaintiff claims that his condition caused "excruciating" pain during urination, (*id.*), thus "significantly affect[ing] [a] daily activit[y]."

---

[14] Hepatitis C is a "chronic viral liver disease that can result in inflamation [sic], scarring, and ultimately cirrhosis of the liver." *Pabon*, 2004 WL 628784, at *1.

"HIV (human immunodeficiency virus) is a virus that attacks the body's immune system" and which, if left untreated, can lead to AIDS.  CDC, *About HIV*, CDC.gov, https://www.cdc.gov /hiv/basics/whatishiv.html (last visited Nov. 30, 2020).

Scabies "is an infestation of the skin by the human itch mite," common symptoms of which include "intense itching and a pimple-like skin rash." CDC, *Scabies Frequently Asked Questions*, CDC.gov, https://www.cdc.gov/parasites/scabies/gen_info/faqs.html (last visited Nov. 30, 2020).  "Scabies in adults frequently is sexually acquired." *Id.*

*Brock*, 315 F.3d at 162; *cf. James v. Kaskiw*, No. 13-CV-526, 2016 WL 770193, at *5 (N.D.N.Y.

Jan. 28, 2016) (assuming that the plaintiff's urinary tract infection and kidney stones, which

caused various urinary complications, constituted serious medical conditions); *Montanez v.*

*Feinerman*, No. 10-CV-419, 2011 WL 293715, at *2–3 (S.D. Ill. Jan. 27, 2011) (concluding that

the plaintiff's medical conditions, including "frequent and painful urination," constituted

"serious medical needs," because they caused "chronic and substantial pain" and "significantly

affect[ed] his daily activities"), *vacated in part on other grounds*, 439 F. App'x 545 (7th Cir.

2011).  And third, Plaintiff has clearly alleged "the existence of chronic and substantial pain,"

*Brock*, 315 F.3d at 162 (citation omitted), particularly—although not exclusively—when

urinating, (*see* Am. Compl. 2; *id.* at 3–4 (alleging that his condition also caused, among other

ailments, "swollen" and "tender testicles")).  Taken together, these factors suggest that Plaintiff's

condition "implicate[d] a medical need sufficiently serious to satisfy the Fourteenth

Amendment's objective prong," *see Turner v. Correct Care Sols.*, No. 18-CV-3370, 2019 WL

1115857, at *9 (S.D.N.Y. Mar. 11, 2019).

Although the Court has not located a case directly on point within the Second Circuit, its

determination is consistent with the limited in-Circuit guidance that does exist.  *See, e.g.*, *Reeder*

*v. Robinson*, No. 16-CV-1129, 2018 WL 3121633, at *7 (N.D.N.Y. Jan. 24, 2018) (concluding,

"solely for purposes of [the] [d]efendants' motion to dismiss, . . . that a painful outbreak of

untreated [genital] herpes is a serious medical condition") (citing *Myrick v. Anglin*, 496 F. App'x

670, 674 (7th Cir. 2012) (concluding that the plaintiff's painful, untreated herpes, which medical

staff had recognized needed treatment, constituted an "objectively serious" condition for

purposes of a deliberate-indifference claim)).  Moreover, federal courts outside the Second

Circuit have reached the same conclusion when confronted with substantially similar facts.  *See*

*Plumes v. Quinlan*, 980 F.2d 738, 1992 WL 355504, at *2 (Memorandum Opinion) (9th Cir. 1992) (concluding that a plaintiff had adequately stated a claim for deliberate indifference based on delayed and ineffective treatment for Chlamydia); *Magee v. Williams*, No. 16-CV-123, 2018 WL 1934072, at *1 (W.D. La. Apr. 24, 2018) (same with respect to a plaintiff who allegedly had "suffer[ed] ten months of pain from a[n] [untreated] [C]hlamydia infection"); *Spears v. Brown*, No. 11-CV-299, 2012 WL 4514156, at *5 (E.D. Ark. July 9, 2012) (denying the defendants' motion for summary judgment based on undisputed evidence that the plaintiff's Chlamydia infection, which caused "severe pain and discharge," had gone untreated for 40 days), *report and recommendation adopted in relevant part*, 2012 WL 4514083 (E.D. Ark. Oct. 2, 2012); *Harmon v. Johnson*, No. 06-CV-740, 2007 WL 4463592, at *5 (E.D. Ark. Dec. 17, 2007) (concluding, for purposes of a summary judgment motion, that the plaintiff had established that he "suffered from an objectively serious medical need," namely, "pain in his right testicle and a tingling sensation when he urinated"); *Jolly v. Klein*, 923 F. Supp. 931, 945 (S.D. Tex. 1996) (concluding that the plaintiff had adequately alleged a serious medical need based on an undiagnosed and untreated Chlamydia infection that produced severe testicular pain and urinary problems, among other symptoms).

Of course, the Court is mindful that where, as here, "a plaintiff complains of delays . . . in providing needed medical treatment, the court should consider the severity of the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in determining whether [the] plaintiff has shown the existence of a sufficiently serious medical need." *Balkum v. Unger*, No. 06-CV-6578, 2009 WL 290439, at *5 (W.D.N.Y. Feb. 5, 2009); *see also Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) ("When a prisoner alleges a temporary delay or interruption in the provision of otherwise adequate medical

treatment, we focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." (citation and quotation marks omitted)); *Smith*, 316 F.3d at 186 ("[It is] the particular risk of harm faced by a [detainee] due to the challenged deprivation of care, rather than the severity of the [detainee's] underlying medical condition, considered in the abstract, that is relevant . . . ."). Accordingly, Kitt argues that "[t]here is no time frame associated with the conversation [P]laintiff claims to have had with [him]," and thus, "it is unknown what period of time is alleged to have passed between the time Plaintiff had his conversation . . . and the time when treatment actually began." (County & Corr. Defs.' Mem. 4.) But this is only partly true. Although the Amended Complaint does not specify the length of time between Plaintiff's conversation with Kitt and the day Plaintiff finally received treatment, it does indicate that when Plaintiff overheard Kitt laughing about his condition "*several days*" after their conversation, Plaintiff still had not received treatment. (*See* Am. Compl. 3 (emphasis added).) At this stage of the case, an alleged delay of "several days" is sufficient to survive a motion to dismiss, particularly in light of the serious long-term complications that could attend Plaintiff's untreated condition. *Cf. Sherman v. Corcella*, No. 19-CV-1889, 2020 WL 4043178, at *10 (D. Conn. July 16, 2020) (concluding that an alleged three-day delay in providing medication for a second-degree burn satisfied the objective prong of a plaintiff's deliberate-indifference claim for purposes of a motion to dismiss); *Bell*, 980 F. Supp. 2d at 560 (assuming that a defendant's five-day delay in providing acid reflux medication, which caused the plaintiff to experience vomiting, was sufficient to satisfy the objective prong of a deliberate-indifference claim); *Waters v. Bloomberg*, No. 19-CV-812, 2019 WL 2343669, at *4 (D. Conn. June 3, 2019) (concluding that a plaintiff "sufficiently alleged an objectively serious medical need" based on stomach pain

29

resulting in part from a defendant's three-day delay in emptying the plaintiff's colostomy bag).[15]

Thus, "[e]ven under a narrower seriousness inquiry that focuses on 'the particular risk of harm'

faced by Plaintiff due to delayed or inadequate treatment," *Vassallo v. City of New York*, No. 15-

CV-7125, 2016 WL 6902478, at *9 (S.D.N.Y. Nov. 22, 2016) (quoting *Smith*, 316 F.3d at 186),

Plaintiff has pled sufficient facts to satisfy the objective prong of his deliberate-indifference

claim.

### b.  Mens Rea Prong

As noted, to establish the mens rea prong, a "pretrial detainee must prove that the

defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act

with reasonable care to mitigate the risk . . . even though the defendant-official knew, or should

have known, that the condition posed an excessive risk to health or safety."  *King v. Falco*, No.

16-CV-6315, 2018 WL 6510809, at *9 (S.D.N.Y. Dec. 11, 2018) (alteration in original)

(underlining omitted) (quoting *Darnell*, 849 F.3d at 35).  After *Darnell*, therefore,

> a [pretrial] detainee asserting a Fourteenth Amendment claim for deliberate
> indifference to his medical needs can allege either that the defendants *knew* that
> failing to provide the complained of medical treatment would pose a substantial
> risk to his health or that the defendants *should have known* that failing to provide
> the omitted medical treatment would pose a substantial risk to the detainee's health.

---

[15] "In men, untreated chlamydia can cause urethral infection and complications such as
swollen and tender testicles," and "[p]ersons with a chlamydia infection have an increased
chance of getting other [sexually transmitted] infections such as gonorrhea or HIV."  N.Y. State
Dep't of Health, *Chlamydia (chlamydia trachomatis genital infection)* 2 (Nov. 2006),
https://www.health.ny.gov/diseases/communicable/chlamydia/docs/fact_sheet.pdf; *see also
Chlamydia - CDC Fact Sheet* 2 ("Untreated chlamydia may also increase [an individual's]
chances of getting or giving HIV – the virus that causes AIDS," and, in rare cases, "[C]hlamydia
can prevent a man from being able to have children.").  Thus, Plaintiff's untreated Chlamydia
clearly posed a serious long-term risk to his health.  Indeed, Plaintiff alleges not only that he
experienced extreme pain while urinating, but also that he exhibited one of the symptoms—
swollen and tender testicles, (*see* Am. Compl. 4)—associated with untreated Chlamydia.

*Charles*, 925 F.3d at 87 (emphasis in original); *cf. Haynes*, 2020 WL 4926178, at *14 n.28 (noting that, to establish a deliberate-indifference claim against nonmedical personnel, a plaintiff must show that the personnel "intentionally delayed access to medical care when the inmate was in extreme pain and ha[d] made his medical problems known to the . . . personnel or that the inmate suffered a complete denial of medical treatment").[16]  As courts have observed, however, the post-*Darnell* inquiry may prove especially challenging at the motion-to-dismiss stage.  *See Haynes*, 2020 WL 4926178, at *7; *King*, 2018 WL 6510809, at *9 ("Distinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion." (alteration omitted)).  Here, that is, the Court must determine, "without the benefit of medical expertise, whether an objectively reasonable person in [Kitt's] position would have known, or should have known, that [his] actions or omissions posed an excessive risk of harm to [Plaintiff]."  *Davis v. McCready*, 283 F. Supp. 3d 108, 120 (S.D.N.Y. 2007).

---

[16] As noted, courts have repeatedly emphasized that deliberate-indifference claims against nonmedical personnel are to be evaluated under the same standards as deliberate-indifference claims against medical personnel.  *See, e.g.*, *Feliciano*, 2017 WL 1189747, at *13.  But whereas the Second Circuit clarified in *Darnell* "that deliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind," *Charles*, 925 F.3d at 86 (citing *Darnell*, 849 F.3d at 33–34), the standard often invoked with respect to nonmedical personnel appears to require a more culpable mental state, referring only to a defendant's "*intentional*[] delay[] [of] access to medical care," *see, e.g.*, *Roundtree*, 2018 WL 1586473, at *6 (emphasis added) (citation omitted).  Although the Court has not identified a case that addresses or resolves this tension, it observes that the oft-quoted standard for nonmedical personnel comes from *Hodge*, 1994 WL 519902, at *11, a 1994 Southern District case that long predated the Second Circuit's 2017 decision in *Darnell*.  Thus, in view of clear authority that deliberate-indifference claims are to be evaluated in the same way regardless of whether the defendants are medical or nonmedical personnel, the Court will evaluate Plaintiff's claim against Kitt under the standard articulated in *Darnell*, which, as noted, "can be shown by something akin to recklessness," *Charles*, 925 F.3d at 86.

Although the Amended Complaint is rather sparse in detail, it still manages to allege that Plaintiff notified Kitt of a serious medical condition, that Kitt acknowledged the severity and urgency of the condition and promised to seek help, and that Kitt failed to seek help as promised. (*See* Am. Compl. 2–3.)  Case law from and within the Second Circuit demonstrates that, at this stage of the case, these allegations plausibly suggest that Kitt either "intentionally [] impose[d] the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [Plaintiff] even though [Kitt] knew, or should have known, that the condition posed an excessive risk to health or safety."  *See Darnell*, 849 F.3d at 35.  In *Whitley v. Bowden*, No. 17-CV-3564, 2018 WL 2170313 (S.D.N.Y. May 10, 2018) ("*Bowden*"), for example, the plaintiff alleged that after he swallowed 20 un-prescribed pills in front of a corrections officer and other prison personnel, the officer simply "laughed and walked off."  *Id.* at *1 (alteration and record citation omitted).  Sometime later, the plaintiff told the officer he felt sick, but the officer told the plaintiff he "didn't care," and threatened to move the plaintiff to another correctional facility.  *Id.* at *2 (record citation omitted).  "These allegations alone," this Court observed, "may be sufficient to plausibly state a claim for deliberate indifference, because [the officer] knew that [the] [p]laintiff had overdosed and was already experiencing symptoms, but threatened to move him to another prison rather than provide medical assistance."  *Id.* at *10.[17]  Moreover, following

---

[17] Because the plaintiff in *Bowden* was an inmate, as opposed to a pretrial detainee, the Court analyzed his deliberate-indifference claim under the Eighth Amendment, rather than under the Due Process Clause of the Fourteenth Amendment.  *See* 2018 WL 2170313, at *6–7.  As discussed, this means the second prong of the plaintiff's claim was defined subjectively, which requires the charged officials to be "subjectively reckless in their denial of medical care."  *Id.* at *7 (citation omitted).  As courts have observed, this standard is more demanding than the objective standard used to evaluate the second prong of a pretrial detainee's deliberate-indifference claim.  *See Feliciano*, 2017 WL 1189747, at *12–13 (observing that whereas the requisite mens rea under the subjective standard is "akin to subjective recklessness[] as the term is used in criminal law," and thus "require[s] that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm [will] result," the requisite mens rea

the officer's threat, the plaintiff alleged that he proceeded to swallow an additional 30 pills in front of the officer. *Id.* at *2. But despite the plaintiff's second apparent suicide attempt, the officer suggested that the plaintiff had simply swallowed toilet paper, and again walked away without seeking assistance. *Id.* The Court found this too was "sufficient to plausibly allege [the officer's] deliberate indifference, even assuming [the officer] was not sure what [the plaintiff] actually swallowed." *Id.* at *10 (quotation marks and record citation omitted). Accordingly, these claims survived the defendants' motion to dismiss. *See id.*

Similarly, in *King v. Falco*, the plaintiff complained to a doctor about hearing loss he was experiencing after a concussion. 2018 WL 6510809, at *2. The doctor, however, allegedly "provided no treatment, further examination, or referral for [the] plaintiff's hearing loss." *Id.* at *9. Applying the objective standard applicable for pretrial detainees, the court concluded that, at the motion-to-dismiss stage, the plaintiff had adequately alleged that the doctor "knew or should have known of the risk of excessive harm [the] plaintiff faced from his ear pain and hearing loss, and . . . failed to act to mitigate the risk." *Id.* Likewise, in *Whitley v. Ort*, No. 17-CV-3652, 2018 WL 4684144 (S.D.N.Y. Sept. 28, 2018) ("*Ort*"), the plaintiff notified a nurse that he had been raped and was in need of medical assistance. *Id.* at *2. But after leaving to seek help, the nurse allegedly was "thwarted by [c]orrections [o]fficers who told her to keep the situation quiet," and thus, she failed to secure medical assistance for the plaintiff. *Id.* at *9. "Drawing all

---

under the objective standard "more closely resembles recklessness as the term is used in the civil context, which does not require the defendant to be subjectively aware of the harm resulting from his acts or omissions" (quotation marks and citations omitted)); *King*, 2018 WL 6510809, at *7 n.8 (noting that the objective standard used to evaluate the second prong of a deliberate-indifference claim under the Fourteenth Amendment is "less stringent" than the subjective standard used to evaluate this prong under the Eighth Amendment). Thus, although *Bowden* was an Eighth Amendment case, a defendant's conduct that satisfies the subjective prong in an Eighth Amendment case will, by definition, satisfy the less rigorous objective standard in a Fourteenth Amendment case such as this.

reasonable inferences in favor of [the] [p]laintiff," this Court found "these allegations []
sufficient to plausibly state a claim for deliberate indifference, because [the nurse] knew that
[the] [p]laintiff had been raped, but failed to provide him medical assistance." *Id.*[18]

Here, as in *Bowden*, Plaintiff brought a serious medical condition to the attention of a
corrections officer.  But whereas the defendant in *Bowden* failed to express alarm, thereby
forcing the Court to infer that he knew or should have known there was a substantial risk based
on the circumstances, Defendant Kitt apparently *did* acknowledge the seriousness of Plaintiff's
condition.  Indeed, Kitt not only expressed alarm, (*see* Am. Compl. 3 ("Wow!  You're burning
dude[.]")), but also promised to seek urgent medical attention, (*see id.* ("I'm going to go speak to
medical about this and I'll be right back.").  Here, then, the inference that Kitt knew or should
have known there was a substantial risk of serious harm facing Plaintiff is arguably stronger than
it was in *Bowden*.  *Cf. Sherman*, 2020 WL 4043178, at *10 (observing, for purposes of a motion
to dismiss, that the defendant's alleged promise "to provide [the plaintiff] with medication," and
her subsequent failure to do so, "sufficiently established facts indicating [that the defendant]
acted with conscious disregard to [the plaintiff's] serious medical needs").  And, as in *Bowden*—
as well as in *King* and *Ort*—Defendant evidently failed to seek medical attention as promised.
Although it is true that Plaintiff has "not alleged that Kitt failed to notify Medical as he
reportedly claimed he would," (County & Corr. Defs.' Mem. 4), at this stage in the proceeding,
the Court finds that such an allegation is implicit in the Amended Complaint.  Indeed, when
Plaintiff overheard Kitt laughing about his condition "several days" after Kitt had vowed to seek
help, Plaintiff still had not received treatment.  (*See* Am. Compl. 3.)  Moreover, the medical

---

[18] The plaintiff's deliberate-indifference claim in *Ort*, as in *Bowden*, arose under the
Eighth Amendment.  *See Ort*, 2018 WL 4684144, at *7–8; *see also supra* n.17.

team's speedy response when Plaintiff finally did lodge a grievance suggests that, had Kitt

notified them as promised, some assistance would have been quickly forthcoming.  Finally, the

fact that Kitt was overheard laughing about Plaintiff's condition several days later suggests that

this ordeal had not simply slipped Kitt's mind.  Kitt clearly remembered Plaintiff's condition and

presumably could have checked to see whether he had received treatment, but there is no

indication he did so.

Thus, accepting Plaintiff's allegations as true, the Court finds that Plaintiff has adequately

stated a claim for deliberate indifference against Defendant Kitt.

### 5.  State Law Claims

To the extent Plaintiff attempts to allege any state law claims, they must be dismissed for

failure to file a notice of claim.  Under New York law, "as a condition precedent to bringing a

claim against a municipality, a plaintiff must file a notice of claim within 90 days after her claim

accrues."  *Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *5

(S.D.N.Y. Sept. 27, 2017) (citing N.Y. Gen. Mun. Law § 50-e(1)(a)); *see also* N.Y. Gen. Mun.

Law § 50-k(6) ("No action . . . shall be prosecuted or maintained against the city . . . or an

employee unless notice of claim shall have been made and served upon the city . . . ."); *Olsen v.

County of Nassau*, No. 05-CV-3623, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008) ("As a

'condition precedent' to commencing a tort action against New York municipalities, or any of

their officers, agents, or employees, New York General Municipal Law § 50-e requires plaintiffs

to file a notice of claim within ninety days after the claim arises." (citation omitted)).  Moreover,

"in a federal court, state notice-of-claim statutes apply to state-law claims."  *Hardy v. N.Y.C.

Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (emphasis omitted).

"Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice." *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006). Further, "the burden is on [the] [p]laintiff to demonstrate compliance with the notice of claim requirements." *Peritz v. Nassau Cnty. Bd. of Coop. Educ. Servs.*, No. 16-CV-5478, 2019 WL 2410816, at *4 (E.D.N.Y. June 7, 2019); *see also Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) ("To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed." (citing, *inter alia*, N.Y. Gen. Mun. Law § 50-i(1)(b))). "The notice of claim requirements are strictly construed, and a plaintiff's 'failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims.'" *Smith v. City of New York*, No. 04-CV-3286, 2010 WL 3397683, at *15 (S.D.N.Y. Aug. 27, 2010) (citation omitted), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013).

Because Plaintiff failed to affirmatively plead that he filed a notice of claim with respect to any state law claims, those claims are dismissed. *See El v. City of New York*, No. 14-CV-9055, 2015 WL 1873099, at *8 (S.D.N.Y. Apr. 23, 2015) ("Absent a showing of such a notice of claim, the complaint may be dismissed for failure to state a cause of action." (citation omitted)); *Naples*, 972 F. Supp. 2d at 390 (dismissing state law claims against municipality where "the [a]mended [c]omplaint is void of any allegation that a notice of claim was filed prior to the commencement of [the] action").

### III.  Conclusion

For the foregoing reasons, the Court grants in full the Municipal Defendants and Medical Defendants' Motion To Dismiss, and partially grants and partially denies the County and

Correctional Defendants' Motion To Dismiss.  In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, the claims that are dismissed are dismissed without prejudice.  If Plaintiff wishes to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Failure to properly and timely amend will likely result in dismissal of the already-dismissed claims with prejudice.  In case of no further amendment, the Action will proceed on the surviving deliberate-indifference claim with respect to Defendant Kitt.

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 42, 46), and to mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket.

SO ORDERED.

DATED:      February 25, 2021
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE