UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TYRON DUMEL,

                              Plaintiff,

     -v-                                              No. 19-CV-2161 (KMK)

WESTCHESTER COUNTY, *et al.*,                         <u>OPINION & ORDER</u>

                              Defendants.

---

<u>Appearances:</u>

Tyron Dumel
Elmira, NY
*Pro Se Plaintiff*

Jane H. Felix, Esq.
Westchester County Attorney's Office
White Plains, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

    Plaintiff Tyron Dumel ("Plaintiff"), a pretrial detainee at Westchester County Jail at the

time of the allegations, brings this Action under 42 U.S.C. § 1983 against Sergeant Matthew Kitt

("Kitt," "Sgt. Kitt," or "Defendant").  (*See* Am. Compl. at 1, 3 (Dkt. No. 33).)[1]

---

    [1] Plaintiff's Amended Complaint also named Westchester County, Correct Care
Solutions, LLC, Medical Director Dr. Raul Ulloa, Commissioner Joseph Spano, Nurse Vladimir
Asseauguste, and Dr. Alexis Gendell as Defendants, but the Court previously dismissed Plaintiff's
claims against them.  (*See* Op. & Order ("2021 Op.") (Dkt. No. 67).)
    Throughout this Opinion, the Court refers to Sgt. Kitt as "Defendant" when discussing
the papers filed with the Court or any position he has taken in them as "Kitt" or "Sgt. Kitt" when
discussing his interactions with Plaintiff as disclosed by the record.

Before the Court is Defendant's Motion for Summary Judgment ("Defendant's Motion"), (*see* Not. of Mot. for Summ. J. ("Not. of Mot.") (Dkt. No. 93)).  For the reasons that follow, the Motion is denied.

### I.  Background

#### A.  Factual Background

The following facts are taken from Defendant's statements pursuant to Local Civil Rule 56.1, (Def's Rule 56.1 Statement ("Def's 56.1") (Dkt. No. 99); Plaintiff's Amended Complaint (Am. Compl.); and Plaintiff's Letter in Response to Defendant's Motion for Summary Judgment dated September 13, 2022 ("Plaintiff's Letter"), (Pl's Letter in Response to Def's Summ. J. Mot. ("Pl's Letter") (Dkt. No. 103)).[2]

---

[2] The Court construes Plaintiff's Letter "[i]n response to defendant Kitt's Summary Judgment motion" as a brief in opposition to Defendant's Motion.  (Pl's Letter at 1.)

Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (adopting the same rule).

"'Pro se litigants are not excused from meeting the requirements of Local Rule 56.1,' and '[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.'"  *Thomas v. DeCastro*, No. 14-CV-6409, 2021 WL 5746207, at *1 n.1 (S.D.N.Y. Dec. 1, 2021) (quoting *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021); then quoting *T.Y.*, 584 F.3d at 418); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (adopting the same rule).

Plaintiff failed to provide a statement of facts that complies with the requirements of Local Rule 56.1.  However, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court has "in its discretion opt[ed] to conduct an assiduous review of the record" when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted); *see also Thomas*, 2021 WL 5746207, at *1 n.1

### 1.  Plaintiff's Chlamydia Infection

Plaintiff arrived at the Westchester County Jail ("WCJ") for pretrial detention on September 25, 2018, whereupon he requested to be tested for sexually transmitted infections ("STIs").  (Def's 56.1 ¶ 2; Am. Compl. 2.)[3]  On September 26, 2018, Plaintiff was tested for STIs.  (Am. Compl. 2; Def's Decl. in Supp. of Mot. ("Def's Decl.") Exh. C ("Pl's Medical Records Pt. 3") 129–30 (Dkt. No. 100-5).)  Two days later, test results indicated that Plaintiff had Chlamydia, (Def's 56.1 ¶¶ 2–3; Am. Compl. 2; Pl's Medical Records Pt. 3 at 129), "a common [sexually transmitted disease]" that can cause considerable discomfort in men, including "a burning sensation" when urinating.  *See* Ctrs. for Disease Control & Prevention ("CDC"), *Chlamydia – CDC Basic Fact Sheet* 1 (June 12, 2022), https://www.cdc.gov/std/chlamydia/stdfact-chlamydia.htm.[4]  The same day, a doctor and nurse

---

(collecting cases); *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1 [statement]."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (citation and italics omitted)); *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of [the] [p]laintiff's pro se status, the Court overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record.").

[3]  Unless otherwise noted, page references to Plaintiff's submissions refer to the ECF stamp at the top of the page.

[4]  The Court notes that symptoms of Chlamydia in men include, among others, "[a] burning sensation when peeing[,] [as well as] a fever and pain in the tubes attached to the testicles."  *Chlamydia – CDC Fact Sheet* 2.

told Plaintiff about the infection, and the doctor ordered medication, a single dose of 2-4 antibiotic pills, to treat Plaintiff's infection. (Def's 56.1 ¶ 3; Am. Compl. 2; Def's Decl. Exh. C ("Pl's Medical Records Pt. 2") at 135 (Dkt. No. 100-4); Def's Decl. Exh. C ("Pl's Medical Records Pt. 4") at 1 (Dkt. No. 100-6).) When the nurse came to Plaintiff's cell to pass out medication, she told Plaintiff that she had forgotten the medication and would return with it later; however, the nurse never returned. (*See* Def's 56.1 ¶ 3.) At this time, Plaintiff was experiencing a single symptom of a slight tingling after he urinated. (Def's Decl. Exh. B ("Pl's Dep.") 28:23–29:16 (Dkt. No. 100-2).)

Over the next several months, Plaintiff spoke to WCJ medical staff often about getting medication to treat his Chlamydia infection. (*See* Def's 56.1 ¶¶ 4–6; Am. Compl. 2.) During October and early November 2018, WCJ medical staff told Plaintiff that he would be treated at some point for his infection, but starting at the end of November, the staff told him that he would not receive treatment because he had refused it. (*See* Pl's Dep. 77:13–78:2.) Plaintiff denies that he ever refused treatment for Chlamydia. (*See* Pl's Letter 3; Am. Compl. 3.)[5]

While his infection remained untreated, Plaintiff's symptoms worsened and included swollen and tender testicles, debilitating headaches, nausea, and severe burning when urinating. (*See* Pl's Letter 1–2; Am. Compl. 2; Pl's Dep. 70:16–71:2.) On December 31, 2018, Plaintiff reported to WCJ medical staff that he had been tested for Chlamydia in September and had not

---

[5] The Court notes that, according to records made by WCJ medical staff who treated Plaintiff on more than 50 occasions between September 28, 2018 and December 30, 2018, Plaintiff did not report his untreated Chlamydia infection during any of those interactions. (*See* Pl's Medical Records Pt. 2 at 25–153; Def's 56.1 ¶ 10.) Additionally, Plaintiff's medical records indicate that he did refuse medication on multiple occasions from September 2018 to January 2019. (*See* Def's 56.1 ¶ 12.) In particular, Plaintiff repeatedly rejected antibiotics prescribed after a dental procedure in October 2018. (*See* Medical Records Pt. 4 at 48–54.) However, there is no record of Plaintiff ever refusing antibiotics for Chlamydia. (*See* Pl's Letter 15–16.)

received treatment.  (*See* Pl's Medical Records Pt. 2 at 27.)  Plaintiff filed a grievance with jail officials the following day (Pl's Letter 13), and his infection was treated on January 2, 2019, (Pl's Medical Records Pt. 2 at 20; Am. Compl. 3).

### 2.  Plaintiff's Interactions with Sgt. Kitt

Plaintiff did not regularly see or interact with Kitt during his time at WCJ.  (*See* Pl's Dep. 63: 5–7; Def's 56.1 ¶ 8.)  In fact, Plaintiff interacted with Kitt on only two occasions.

First, Plaintiff spoke to Kitt directly about his infection.  (*See* Pl's Dep. at 56:7–9; 65:19– 21.)  Kitt claims that Plaintiff approached him in December 2018.  (*See* Def's 56.1 ¶ 8; Pl's Dep. 65:19–21.)  Plaintiff argues that he doesn't recall when he had the conversation with Kitt.  (*See* Pl's Letter 2; Pl's Dep. 56:7–9.)

Plaintiff and Kitt had a brief conversation.  Kitt, relying on Plaintiff's deposition testimony, takes the position that Plaintiff told Kitt that he had a medical condition that needed to be taken care of, but never explicitly informed Kitt that he had Chlamydia or described any symptoms.  (*See* Pl's Dep. 61:6–13, 16–19; 63:18–24; Def's 56.1 ¶ 7.)  Plaintiff, relying on his Amended Complaint, claims that he informed Kitt that he had recently tested positive for Chlamydia while in WCJ and that WCJ medical staff had not provided any form of treatment despite their knowledge of his infection.  (*See* Am. Compl. at 2.)

Whatever Plaintiff told Kitt, Kitt responded "wow, you're burning, dude," which Plaintiff understood to be a reference to his Chlamydia infection.  (*See* Pl's Dep. 61:19–21; Am. Compl. at 3.)  Kitt then told Plaintiff that he "was going to speak with [the] medical [staff] and [would] be back in a few minutes" (*Id.* at 61:22–24; Am. Compl. at 3; Def's 56.1 ¶ 8).  Kitt never returned.  (*See* Pl's Dep. 61:22–62:3; Def's 56.1 ¶ 8.)  Plaintiff did not speak to Kitt about his infection again.  (*See* Pl's Dep. 63:3–5, 12–15; Def's 56.1 ¶ 8.)

Plaintiff also overheard Kitt comment on his infection while speaking with another officer.  In his Amended Complaint, Plaintiff stated that "several days [after I told Kitt about my infection] I overheard Kitt laughing with [Sgt]. Carrozza about my Chlamydia condition."  (Am. Compl. at 3.)  During his deposition, Plaintiff testified that Kitt was aware of his Chlamydia infection a few days after September 28 because around that time he overheard Kitt making a comment—"that guy's burning"—to another corrections officer while laughing.  (*See* Pl's Dep. 52:16–53:8.)  Plaintiff emphasized that he was certain that he overheard this conversation *before* speaking to Kitt because it was his belief that Kitt was already aware of his infection that caused him to discuss it directly with Kitt and ask for his assistance speaking to medical staff.  (*See* Pl's Dep. 61:6–21.)

    B.  Procedural Background

Plaintiff filed his initial Complaint on March 8, 2019, naming Kitt, Westchester County (the "County"), Correct Care Solutions, LLC ("Correct Care"), Medical Director Dr. Raul Ulloa ("Ulloa"), Commissioner Joseph Spano ("Spano"), Dr. Alexis Gendell ("Gendell"), and "Nurse Jane Doe" as Defendants.  (Compl. 1 (Dkt. No. 2).)[6]  The Court granted Plaintiff's request to proceed *in forma pauperis* on May 21, 2019, (*see* Dkt. No. 5), and, on June 24, 2019, issued an Order of Service directing Correct Care to aid Plaintiff in ascertaining the identity of Nurse Jane Doe and to inform Plaintiff of this person's identity, (*see* Dkt. No. 9).  The Order of Service also directed Plaintiff to file an amended complaint within 30 days of learning the nurse's identity.  (*Id.*)  On August 7, 2019, counsel for Defendants identified the nurse as Vladimir Asseauguste ("Asseauguste").  (Letter from Paul A. Sanders, Esq., to Court (Aug. 7,

---

[6] The Court refers to the County and Correct Care as "Municipal Defendants"; Ulloa, Gendell, and Asseauguste as "Medical Defendants"; Spano and Kitt as "Correctional Defendants"; and all Defendants collectively as "Defendants."

2019) 1 (Dkt. No. 18).)  The following day, the Court again directed Plaintiff to file an amended complaint naming Asseauguste as a Defendant.  (*See* Dkt. No. 19.)  After Plaintiff failed to file an amended complaint, the Court issued an Order on November 8, 2019 directing Plaintiff to show cause why the claims against "Nurse Jane Doe" should not be dismissed.  (*See* Order To Show Cause 2 (Dkt. No. 24).)  Plaintiff responded on December 4, 2019, (*see* Dkt. No. 28), and, after receiving several extensions from the Court, (*see* Dkt. Nos. 29, 32), Plaintiff filed his Amended Complaint on March 4, 2020, (*see* Dkt. No. 33).

Pursuant to a briefing schedule set by the Court, (*see* Dkt. No. 40), Municipal Defendants and Medical Defendants filed a Motion To Dismiss on May 26, 2020, (*see* Not. of Mot. (Dkt. No. 42)), and the County and Correctional Defendants filed a separate Motion To Dismiss on June 2, 2020, (*see* Not. of Mot. (Dkt. No. 46)).  Meanwhile, on May 29, 2020, Plaintiff filed a letter in response to arguments outlined by counsel for Defendants in their respective pre-motion letters.  (*See* Letter from Tyron Dumel to Court (May 29, 2020) 1 (Dkt. No. 47).)  Municipal and Medical Defendants filed their Reply on July 8, 2020.  (*See* Reply Mem. of Law in Further Supp. of Defs.' Mot. To Dismiss (Dkt. No. 48).)  On July 13, 2020, Plaintiff filed a short document styled as an "Affidavit in Response to [Defendants'] Motion[s] To Dismiss," in which Plaintiff requested "time for discovery," averring that Defendants were in possession of "crucial documents" needed to oppose the Motions to Dismiss.  (*See* Aff. in Resp. to Mot. To Dismiss ¶¶ 5–6 (Dkt. No. 51).)  The Court denied the request on July 16, 2020, explaining that "[d]iscovery at this point in the proceedings would be premature," (*see* Dkt. No. 54), and County and Correctional Defendants filed their Reply on July 21, 2020, (*see* Reply Mem. of Law in Further Supp. of Mot. To Dismiss (Dkt. No. 55)).  On August 24, 2020, Plaintiff filed a letter with the Court requesting additional time to file an Opposition to Defendants' Motions.  (*See* Letter from

7

Tyron Dumel to Court (Aug. 18, 2020) (Dkt. No. 56).)  On August 27, 2020, the Court gave

Plaintiff until September 30, 2020 to file any additional Opposition papers, (*see* Dkt. No. 57), but

Plaintiff failed to do so.  The Court issued an Opinion & Order on February 25, 2021 dismissing

all Defendants except for Kitt.  (*See* 2021 Op.)

The Parties concluded discovery concerning Plaintiff's deliberate indifference claim on

June 21, 2022.  (*See* Dkt. (minute entry for May 21, 2022).)  On July 1, 2022, Defendant filed a

letter motion seeking leave to file a Motion for Summary Judgment.  (*See* Dkt. No. 89.)  The

Court set a briefing schedule on July 13, 2022.  (*See* Dkt. No. 90.)  Defendant submitted his

Motion for Summary Judgment on August 11, 2022.  (*See* Def's Not. of Mot. (Dkt. No. 93);

Def's 56.1; Def's Decl.; Def's Mem of Law in Supp. of Summ. J. ("Def's Mem." (Dkt. No. 101);

Not. to Pro Se Litigant (Dkt. No. 102).)  On September 11, 2022, Plaintiff filed a Response.  (*See*

Pl's Letter.)  Defendant filed his Reply on October 5, 2022.  (*See* Reply Mem. of Law in Supp.

of Summ. J. ("Def's Reply") (Dkt. No. 104).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River

v. Rockland Cnty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the

movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should

be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).  However, a court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'"  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)).  Even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he credibility of [Plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact.").

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se

litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest,"

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation

marks omitted).  "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the

usual requirements of summary judgment, and a pro se party's bald assertions unsupported by

evidence . . . are insufficient to overcome a motion for summary judgment." *Houston v.*

*Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d

346, 351 (E.D.N.Y. 2014) (alterations, italics, and quotation marks omitted); *see also Flores v.*

*City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. My 31, 2017) (same).

 B.  Sufficiency of Plaintiff's Evidence

  As a threshold matter, Defendant argues that Plaintiff has not produced evidence

sufficient to withstand summary judgment because he relies almost exclusively upon speculative

and subjective deposition testimony and the allegations of his Complaint.  (*See* Def's Mem. at 3.)

Defendant cites to several cases from this district and the Second Circuit to support his position,

but the Court finds these cases are inapplicable here.  In *Deebs v. Alstom*, 346 F. App'x 654 (2d

Cir. 2009), the Second Circuit affirmed the district court's decision to grant summary judgment

against the plaintiff because plaintiff had "made no attempt . . . to square their own speculative,

and subjective, testimony with the hard evidence adduced during discovery." *Id.* at 656

(alteration in original).  Here, Plaintiff's account of the events at issue, while not always

consistent, has never been speculative, and Defendant has conceded, while disputing certain

details, that the events actually occurred.  *See supra* Section 1.A.  Similarly, Defendant's citation

to *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287 (S.D.N.Y. 2015), is inapposite

because the plaintiff in that case relied exclusively on his deposition testimony about historical

events related to the use of a trademark plaintiff claimed, (*id.* at 326), while here there is

evidence in Plaintiff's medical records that substantiates portions of Plaintiff's statements in his

deposition.  *See supra* Section 1.A.  Finally, *George v. Rockland State Psychiatric Ctr.*, No. 10-

CV-8091, 2014 WL 5410059 (S.D.N.Y. Oct. 23, 2014), is inapplicable because the plaintiff's

evidence in that case was a portion of his deposition that did not provide any support for his

claim, (*see id.* at *7), while here Plaintiff testified in his deposition at length about the facts in

dispute.  *See supra* Section 1.A.

Plaintiff's account of events has somewhat thin support in the record, but the Second

Circuit has been clear that, at summary judgment, it is not for this Court to make determinations

as to any discrepancies.  *See Scott*, 344 F.3d at 289–90 ("By finding against [the plaintiff] on the

basis of the disparity between some of [plaintiff]'s medical records and statements. . . , the

district court made an impermissible credibility determination and weighed contradictory proof.

The credibility of [the plaintiff's] statements and the weight of contradictory evidence may only

be evaluated by a finder of fact.").  The Court finds that that the evidence Plaintiff has

marshalled is sufficient to require Defendant to demonstrate his entitlement to summary

judgment.

C.  Analysis

Plaintiff's sole claim is that Defendant was deliberately indifferent to his medical needs.

Because Plaintiff was a pretrial detainee at the time he was allegedly denied medical care,

Plaintiff's claim falls under "the Due Process Clause of the Fourteenth Amendment, rather than

the Cruel and Unusual Punishments Clause of the Eight[h] Amendment."  *Darnell v. Pineiro*,

849 F.3d 17, 29 (2d Cir. 2017).  A pretrial detainee's rights are "at least as great as the Eighth

Amendment protections available to a convicted prisoner."  *Id.* (quoting *City of Revere v. Mass.

Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

"[W]hile in custody, a pretrial detainee has a Fourteenth Amendment substantive due process right to care and protection . . . ." *Case v. Anderson*, No. 16-CV-983, 2017 WL 3701863, at *8 (S.D.N.Y. Aug. 25, 2017) (quoting *Kelsey v. City of N.Y.*, 306 F. App'x 700, 702 (2d Cir. 2009)).  To establish a claim for deliberate indifference to medical needs under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee must establish two elements: first, that the "deprivation of medical care . . . [was] 'sufficiently serious,'" and second, that the defendant "acted or failed to act with 'a sufficiently culpable state of mind.'" *Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (first quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006); then quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The first element "is evaluated the same way under both the Eighth Amendment and Fourteenth Amendment." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *19 n.19 (S.D.N.Y. Mar. 30, 2018) (citing *Darnell*, 849 F.3d at 30).  This requirement is "objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone v. N. Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted).  "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30 (citation and quotation marks omitted).  Analyzing this objective requirement involves two inquiries: "[t]he first inquiry is whether the [detainee] was actually deprived of adequate medical care," *Salahuddin*, 467 F.3d at 279, and the second "asks whether the inadequacy in medical care is sufficiently serious." *id.* at 280 (quotation marks and citation omitted).  To meet the objective requirement, "the inmate must show that the condition[] . . . pose[d] an unreasonable risk of serious damage to his health."

*Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).  "There is no settled, precise metric to guide

a court in its estimation of the seriousness of a [detainee's] medical condition."  *Brock v. Wright*,

315 F.3d 158, 162 (2d Cir. 2003).  Nevertheless, the Second Circuit has presented the following

non-exhaustive list of factors to consider when evaluating a detainee's medical condition: "(1)

whether a reasonable doctor or patient would perceive the medical need in question as important

and worthy of comment or treatment, (2) whether the medical condition significantly affects

daily activities, and (3) the existence of chronic and substantial pain."  *Id.* (quotation marks

omitted) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Morales v.*

*Fischer*, 46 F. Supp. 3d 239, 247 (W.D.N.Y. 2014) (same), *appeal dismissed*, No. 14-3881 (2d

Cir. June 18, 2015).  Generally, the condition must be "'a condition of urgency' that may result

in 'degeneration' or 'extreme pain.'"  *Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-

7351, 2017 WL 2274485, at *3 (S.D.N.Y. May 24, 2017) (quoting *Chance*, 143 F.3d at 702)).

Where the alleged inadequacy is a delay in treatment, the seriousness inquiry should

focus on "the severity of the temporary deprivation alleged by the prisoner [because] it[] [i]s the

particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than

the severity of the prisoner's underlying medical condition, considered in the abstract, that is

relevant[.]"  *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (citations omitted); *see also*

*Johnson v. City of N.Y.*, No. 12-CV-8265, 2014 WL 5393181, at *5 (S.D.N.Y. Oct. 21, 2014),

*report and recommendation adopted*, No. 12-CV-8265, 2014 WL 6455162 (S.D.N.Y. Nov. 17,

2014), *aff'd*, 633 F. App'x 37 (2d Cir. 2016) ("Where. . . the claim is that medical treatment has

been improperly delayed, the inquiry with respect to the objective element focuses on the

sequelae of the delay rather than the underlying condition itself.").

The second element "applies differently to claims under the Eighth Amendment and the Fourteenth Amendment." *Howard v. Brown*, No. 15-CV-9930, 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018) (citing *Darnell*, 849 F.3d at 34–35). "Prior to the Second Circuit's decision in [*Darnell*, 849 F.3d 17,] the second element—whether the defendant acted with a sufficiently culpable state of mind—was evaluated subjectively," regardless of whether the plaintiff's claim arose under the Eighth Amendment (in the case of a convicted prisoner) or the Fourteenth Amendment (in the case of pretrial detainees). *Ryan v. Cnty. of Nassau*, No. 12-CV-5343, 2018 WL 354684, at *3 (E.D.N.Y. Jan. 10, 2018). However, in *Darnell*, in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Second Circuit held that when a claim arises under the Fourteenth Amendment, "the pretrial detainee must prove that the defendant-official acted intentionally" in denying adequate medical care, "or recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *see also Ryan*, 2018 WL 354684, at *3 (same). "In other words, the second element of a deliberate indifference claim under the Fourteenth Amendment"—the so-called "mens rea prong"— is now "'defined objectively,' and a plaintiff is not required to show subjective awareness by the defendant that '[his] acts (or omissions) have subjected the pre-trial detainee to a substantial risk of harm.'" *Ryan*, 2018 WL 354684, at *3 (alteration in original) (quoting

*Darnell*, 849 F.3d at 35).[7],[8]  Despite the slightly lower standard articulated in *Darnell*, which is

akin to objective recklessness, "any § 1983 claim for a violation of due process requires proof of

a mens rea greater than mere negligence."  *Smith*, 2017 WL 4417699, at *3 (italics omitted)

(quoting *Darnell*, 849 F.3d at 36); *see also Ryan*, 2018 WL 354684, at *3 (same); *Grimmett*,

2017 WL 2274485, at *4 (same).  "A detainee must prove that an official acted intentionally or

recklessly, and not merely negligently."  *Darnell*, 849 F.3d at 36.  Courts in this district have

held, relying on Eighth Amendment caselaw, that "[t]he same standards apply to a claim of

deliberate indifference to serious medical needs on the part of nonmedical prison personnel" as

apply to medical personnel. *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *13

(S.D.N.Y. Mar. 30, 2017) (quoting *Hodge v. Coughlin*, No. 92-CV-622, 1994 WL 519902, at

*11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995)).

### 1.  Sufficiently Serious Condition

The Court must first assess whether Plaintiff's Chlamydia infection posed an

"unreasonable risk of damage to his health" and whether the harm he experienced because of the

delay in treatment he experienced due to Kitt's failure to inform WCJ medical staff resulted in a

sufficiently serious deprivation.  *Walker*, 717 F.3d at 125.

As to the first inquiry, the Court notes that no court in the Second Circuit has addressed

whether Chlamydia is a condition that poses an unreasonable risk to a detainee's health.

---

[7] The Second Circuit indicated in *Darnell* that, to prevent confusion, the second prong under the Fourteenth Amendment analysis should now be referred to as the "mens rea prong," while the second prong under the Eighth Amendment analysis might still appropriately be referred to as the "subjective prong."  *See Darnell*, 849 F.3d at 29 (italics omitted).

[8] The Second Circuit has since confirmed that "[a]lthough *Darnell* did not specifically address medical treatment, the same principle applies" to such claims.  *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (citation omitted).

However, applying the factors identified by the Second Circuit, it is clear that "a reasonable doctor or patient would perceive [Plaintiff's] medical need . . . as important and worthy of comment or treatment," *Brock*, 315 F.3d at 162 (quotation marks omitted).  In fact, Plaintiff's medical records show that the medical staff who reviewed Plaintiff's STI test results in September 2018 found Plaintiff's condition worthy of treatment because they prescribed oral antibiotics to treat it.  (*See* Def's 56.1 ¶ 3; Am. Compl. 2; Pl's Medical Records Pt. 2 at 135; Pl's Medical Records Pt. 4 at 1.)  Second, Plaintiff has claimed that his condition caused severe pain during urination, thus "significantly affect[ing] [a] daily activit[y]." *Brock*, 315 F.3d at 162; *cf. James v. Kaskiw*, No. 13-CV-526, 2016 WL 770193, at *5 (N.D.N.Y. Jan. 28, 2016) (assuming that the plaintiff's urinary tract infection and kidney stones, which caused various urinary complications, constituted serious medical conditions).  And third, Plaintiff has repeatedly testified to "the existence of chronic and substantial pain," *Brock*, 315 F.3d at 162 (citation omitted), particularly—although not exclusively—when urinating, (*see* Pl's Letter at 1–2; Am. Compl. at 2; Pl's Dep. at 70:16–71:2).  Taken together, these factors indicate that Plaintiff's condition "implicate[d] a medical need sufficiently serious to satisfy the Fourteenth Amendment's objective prong." *Turner v. Correct Care Sols.*, No. 18-CV-3370, 2019 WL 1115857, at *9 (S.D.N.Y. Mar. 11, 2019).

Additionally, Plaintiff suffered a serious deprivation due to the delay caused by Kitt's failure to inform WCJ medical staff of his condition.  The Court is mindful of the Second Circuit's guidance that it is "the particular risk of harm faced by a prisoner due to the challenged deprivation" that is relevant under these circumstances. *Smith*, 316 F.3d at 186.  Reviewing the facts in the light most favorable to Plaintiff, he may have suffered a delay in treatment as long as two to three months due to Kitt's failure to inform WCJ medical personnel, a period during

which Plaintiff's symptoms intensified.  (*See* Pl's Letter at 1–2; Am. Compl. at 2; Pl's Dep. at 70:16–71:2.)[9]  When faced with similar circumstances, the Second Circuit held that a multi-month delay in treatment of an STI is a sufficiently serious injury where the plaintiff suffered unnecessary harm.  *See Salahuddin*, 467 F.3d at 281 (holding that a five-month postponement of Hepatitis C treatment constituted a sufficiently serious delay).

While no court in the Second Circuit has addressed the question, courts in other circuits have found that a delay in treating Chlamydia can be a sufficiently serious deprivation.  *See Magee v. Williams*, No. 16-CV-123, 2018 WL 1934072, at *1 (W.D. La. Apr. 24, 2018) (holding that plaintiff stated a claim for deliberate indifference where plaintiff allegedly had "suffer[ed] ten months of pain from a[n] [untreated] [C]hlamydia infection"); *Spears v. Brown*, No. 11-CV-299, 2012 WL 4514156, at *5 (E.D. Ark. July 9, 2012) (denying motion for summary judgment based on undisputed evidence that the plaintiff's Chlamydia infection, which caused "severe pain and discharge," had gone untreated for 40 days), *report and recommendation adopted in relevant part*, 2012 WL 4514083 (E.D. Ark. Oct. 2, 2012); *Harmon v. Johnson*, No. 06-CV-740, 2007

---

[9]  Defendant argues that any delay in treatment attributable to Kitt was less than 30 days because, according to Plaintiff's deposition testimony, he did not inform Kitt about his infection until December 2018.  (Def's Mem. 7.)  As the Court has noted, the Parties dispute the timing of Plaintiff's conversation with Kitt.  Defendant argues the conversation occurred during December.  (*See* Def's 56.1 ¶ 8; Pl's Dep. 65:19–21.)  Plaintiff counters that he is uncertain when the conversation occurred.  (*See* Pl's Letter 2; Pl's Dep. 56:7–9.)  Thus, the conversation may well have occurred prior to December 2018, and a longer delay could be attributable to Kitt.  However, even assuming, arguendo, that the conversation did occur in December, up to a third of the delay in Plaintiff's treatment would be attributable to Kitt's failure to communicate Plaintiff's report to WCJ medical staff.  Moreover, Plaintiff's symptoms intensified over the period at issue from a slight tingling after urination to a severe burning sensation, along with severe headaches and nausea.  (*See* Pl's Letter 1–2; Am. Compl. 2; Pl's Dep. 70:16–71:2.)  The period of delay attributable to Kitt would also be the period during which Plaintiff suffered the most severe symptoms from his infection.  (*Id.*)  As a result, even if the conversation did occur in December, Kitt would still be responsible for the portion of the delay that resulted in the most severe pain to Plaintiff.

WL 4463592, at *5 (E.D. Ark. Dec. 17, 2007) (concluding, for purposes of a summary judgment motion, that the plaintiff had established that he "suffered from an objectively serious medical need," namely, "pain in his right testicle and a tingling sensation when he urinated"); *Jolly v. Klein*, 923 F. Supp. 931, 945 (S.D. Tex. 1996) (concluding that the plaintiff had adequately alleged a serious medical need based on an undiagnosed and untreated Chlamydia infection that produced severe testicular pain and urinary problems, among other symptoms).  The Court finds these cases persuasive and holds that there is an issue of material fact as to whether the pain Plaintiff suffered as the result of the delay in treating his Chlamydia infection is a sufficiently serious deprivation.

2.  Mens Rea

As noted, to establish mens rea, a "pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *9 (S.D.N.Y. Dec. 11, 2018) (alteration in original) (underlining omitted) (quoting *Darnell*, 849 F.3d at 35).  "[A] [pretrial] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health."  *Charles*, 925 F.3d at 87 (emphasis in original).

The Court finds that there are issues of material fact as to whether Sgt. Kitt knew that a delay in treatment would "pose a substantial risk to [Plaintiff's] health."  *Id*.  Drawing all

inferences in Plaintiff's favor, Plaintiff spoke to Kitt about his Chlamydia infection and

explained WCJ medical staff had not treated it.  (*See* Am. Compl. 2.)  Kitt responded by

commenting on the severity of the infection and telling Plaintiff he would report Plaintiff's

infection to medical and be right back.  (*See* Pl's Dep. 61:19–24; Am. Compl. 3.)  Kitt never

returned.  (*See* Pl's Dep. 61:22–62:3; Def's 56.1 ¶ 8.)  Kitt also never spoke to Plaintiff about his

infection again before Plaintiff was treated.  (*See* Pl's Dep. 63:3–5, 12–15; Def's 56.1 ¶ 8.)  Plaintiff

also overheard Kitt speaking with another officer about Plaintiff's infection.  (*See* Am. Compl. 3;

Pl's Dep. 52:16–53:8.)  It is true that Plaintiff has not provided a consistent account of when he

overheard this interaction, but whether it was before or after his conversation with Kitt, it still

supports an inference that Kitt knew that Plaintiff had an untreated infection.  (*Id.*)  While these two

interactions provide only a limited factual basis to support Kitt's knowledge of or reckless

disregard of the risk to Plaintiff's health posed by his Chlamydia infection, courts have denied

summary judgment under similar circumstances.  *See, e.g., Bookman v. Lindstrand*, No. 15-CV-

1542, 2018 WL 3121688, at \*13 (N.D.N.Y. Feb. 14, 2018), *report and recommendation*

*adopted*, No. 15-CV-1542, 2022 WL 513929 (N.D.N.Y. Mar. 26, 2018) (denying summary

judgment for defendant rehabilitation counselor where record demonstrated plaintiff had told

defendant on three or four occasions over the course of several months that plaintiff's medication

was causing suicidal ideation and defendant failed to inform jail medical staff after any of the

reports); *Hernandez v. Cnty. of Nassau*, No. 17-CV-1646, 2022 WL 513929, at \*14 (E.D.N.Y.

Feb. 20, 2022) (denying summary judgment where question of material fact existed as to whether

plaintiff had told defendant guards, during their one interaction with plaintiff, that plaintiff

required asthma medication due to difficulty breathing) .

Defendant raises two challenges to the sufficiency of the record.  First, Defendant claims

that Plaintiff has adduced no facts that indicate that Kitt would have been aware that a delay in

treatment would result in a substantial risk of harm, because Plaintiff and Kitt had only a single conversation and Plaintiff was not explicit about his infection.  (Def's Mem. at 8; Def's Reply at 4.)  Although the Court has found that there is a dispute as to what exactly Plaintiff said during his brief conversation with Kitt, this argument is undermined by the fact that Kitt responded to Plaintiff's request for medical assistance, however phrased, with the comment, "wow, you're burning dude." (*See* Pl's Dep. at 61:19–21; Am. Compl. at 3.)  Even if Plaintiff was not explicit about his Chlamydia infection, as Defendant argues, Kitt's response allows for the inference that he understood that Plaintiff was suffering from Chlamydia, a well-known symptom of which is a burning sensation during urination.  Thus, even based on this single interaction, an inference could be drawn that Kitt was aware of the harm that would result—continued pain during urination—if Plaintiff did not receive medical assistance for his infection.

Second, Defendant claims that he could not be responsible for any delay in treatment because Plaintiff had independent access to WCJ medical staff and discussed his infection with them.  (Def's Mem. at 8; Def's Reply at 4.)  The Court finds that this argument also fails.  The focus of the deliberate indifference analysis is on Kitt's, rather than Plaintiff's actions.  *See Charles*, 925 F.3d at 87 (explaining that plaintiff must show that the "defendant[] *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendant[] *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health.") (emphasis in original).  It is true that Plaintiff was independently seeking medical care and his requests were being denied.  (*See* Def's 56.1 ¶¶ 4–6; Am. Compl. 2; Pl's Dep. 77:13–78:2.)  But it is also true that Kitt acknowledged the seriousness of Plaintiff's condition to Plaintiff.  (*See* Pl's Dep. 61:19–21; Am. Compl. 3.)  A reasonable inference could be drawn that Kitt knew or should have known that he would be

putting Plaintiff's health at risk when he promised to bring Plaintiff's infection to the attention of

WCJ medical staff and then failed to do so.  Faced with similar circumstances, courts in this

district have denied summary judgment.  *See Benitez v. King,* No. 17-CV-06230, 2020 WL

4933674, at *3 (W.D.N.Y. Aug. 24, 2020) (denying summary judgment for defendant-prison

officials who had ignored plaintiff's requests for medical care, even though plaintiff had also

grieved lack of access); *Bookman*, 2018 WL 3121688, at *13 (denying summary judgment for

defendant rehabilitation counselor who failed to inform jail medical staff of plaintiff's

complaints about his medication, even though plaintiff had also written letters to other officials

seeking care).

      As there exist material questions of fact which must be resolved at trial, summary

judgment is denied.

### III.  Conclusion

      For the foregoing reasons, Defendant's Motion for Summary Judgment is denied.  The

Clerk of Court is respectfully directed to terminate the pending Motion.  (*See* Dkt. No. 93).  The

Clerk is also directed to mail a copy of the Court's Opinion to Plaintiff.  A status conference will

be held on April 5, 2023 at 3:30 PM.

SO ORDERED.

DATED:      February 14, 2023
                White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE